**UNITED STATES of America,
Appellee,**

v.

**Reinaldo OLIVARES–VEGA, Appellant.**

**No. 772, Docket 73–2532.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 15, 1974.

Decided April 3, 1974.

---

Sheila Ginsberg, New York City (William J. Gallagher, The Legal Aid Society, E. Thomas Boyle, New York City, of counsel), for appellant.

Joan S. O'Brien, Asst. U. S. Atty. (Edward John Boyd, V, Acting U. S. Atty. Dist. E.D.N.Y., L. Kevin Sheridan, Asst. U. S. Atty., of counsel), for appellee.

Before FEINBERG and OAKES, Circuit Judges, and TYLER, District Judge.*

OAKES, Circuit Judge:

This appeal, from a conviction after a jury trial for illegal importation of cocaine, 21 U.S.C. § 952(a), and possession with intent to distribute that drug, 21 U.S.C. § 841(a)(1), raises three questions: whether the *Miranda* warnings given appellant were sufficient to permit a post-arrest statement made by him to agents of the Federal Drug Enforcement Administration (FDEA) to go into evidence; whether there was sufficient proof that the substance imported and possessed by appellant was cocaine; and whether an instruction to the jury that "conscious avoidance" of knowledge was the full equivalent of knowledge was proper. Appellant had been apprehended as an international arrival from Chile at John F. Kennedy International Airport by FDEA agents; his suitcases contained 16 glassine envelopes filled with 13 pounds of a white powder substance. After conviction, he was sentenced on the two counts to concurrent terms of five years' imprisonment (pursuant to 18 U.S.C. § 4208(a)(2)) and 10 years' special parole. It is unnecessary to state the facts in detail except as they bear upon the issues presented here.

The *Miranda* argument is not a new one in this court. The warnings were read to appellant in Spanish from a form, now happily no longer in use, which, the appellant argues—not without some justification—could have misled him in that it failed to alert him of his rights in the event he was indigent to have an attorney prior to and during the agent's questioning.[1] Appellant

---

* United States District Judge for the Southern District of New York, sitting by designation.

1. STATEMENT OF RIGHTS

Before we ask you any questions, it is my duty to advise you of your rights.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during questioning.

You may have an attorney appointed by the U.S. Commissioner or the court to represent you if you cannot afford or otherwise obtain one.

If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer.

HOWEVER—

You may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire.

would have us hold this warning insufficient by following Seventh,[2] Ninth,[3] Tenth[4] and possibly Fifth Circuit[5] decisions on this point. At least six state courts have also found such warnings to be insufficient.[6]

Opposing appellant's position are decisions of this circuit, one of the most pertinent being Massimo v. United States, 463 F.2d 1171, 1174 (2d Cir. 1972), cert. denied, 409 U.S. 1117, 93 S. Ct. 920, 34 L.Ed.2d 700 (1973), as well as decisions of the Eighth Circuit,[7] probably the Fifth Circuit,[8] and at least five state courts.[9] We are, of course, bound by the decisions of this circuit unless they can be distinguished from the facts of this case—in terms of the warning itself.

In Massimo v. United States, *supra,* this court held proper a warning which said that the defendant had the right to talk with a lawyer before questioning, to have a lawyer present during questioning, and that "We have no way of furnishing you a lawyer but one will be appointed for you, if and when you go to court." 463 F.2d at 1173. The court, *id.,* accepted the reasoning of the Fifth Circuit in United States v. Lacy, 446 F.2d 511, 513 (1971), that it is immaterial that an accused is told an attorney will be appointed later if he has first been informed that he has a right to counsel before answering any questions. In United States v. Carneglia, 468 F.2d 1084, 1090 (2d Cir. 1972), this court upheld a warning that advised the defendant "if he could not afford an attorney, why one would be appointed for him if and when he went to court." This warning followed the statement that "he had the right to speak to an attorney before being questioned." In United States v. Lamia, 429 F.2d 373, 375–376 (2d Cir.), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970), the appellant had been advised of his right to have counsel present during questioning and this court upheld the sufficiency of the warning "if he was not able to afford an attorney, an attorney would be appointed by the court."

Although the law among the circuits and numerous state courts is contradictory on this question, the Supreme Court, with only one Justice dissenting, recently declined to accept review of a case presenting this question. Wright v. North Carolina, cert. denied, 94 S.Ct. 1452 (1974) (Douglas, J., dissented with opinion from denial). The law in this circuit is, in any event, well settled and, absent en banc consideration, controls the disposition of this question against appellant.

There is no substance to appellant's second point on appeal—that there was no proof that the white powder found in appellant's luggage was cocaine. Government counsel in opening stated there was a stipulation that if a

---

2. Williams v. Twomey, 467 F.2d 1248 (7th Cir. 1972).

3. United States v. Garcia, 431 F.2d 134 (9th Cir. 1970). *But see* United States v. Noa, 443 F.2d 144 (9th Cir. 1971).

4. Coyote v. United States, 380 F.2d 305 (10th Cir.), cert. denied, 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967).

5. Fendley v. United States, 384 F.2d 923 (5th Cir. 1970). *But see* case cited note 8 *infra.*

6. Square v. State, 283 Ala. 548, 219 So.2d 377 (1969) ; Moore v. State, 251 Ark. 436, 472 S.W.2d 940 (1971) ; State v. Grierson, 95 Idaho 155, 540 P.2d 1204 (1972) (dictum) ; State v. Carpenter, 211 Kan. 234, 505 P.2d 753 (1972) ; Scharr v. State, 499 P.2d 450 (Okl.Cr.App.1972) ; State v. Creach, 77 Wash.2d 194, 461 P.2d 329 (1969).

7. Klingler v. United States, 409 F.2d 299 (8th Cir. 1969).

8. United States v. Lacy, 446 F.2d 511 (5th Cir. 1971). *Lacy* contained no citation to Fendley v. United States, *supra,* a decision that it appears to have overruled sub silentio.

9. People v. Williams, 131 Ill.App. 149, 264 N.E.2d 901 (1970) ; Jones v. State, 253 Ind. 235, 252 N.E.2d 572 (1969) ; People v. Campbell, 26 Mich.App. 196, 182 N.W.2d 4 (1970), cert. denied, 401 U.S. 945, 91 S.Ct. 960, 28 L.Ed.2d 228 (1971) ; Evans v. State, 275 So.2d 83 (Miss.1973) ; People v. Swift, 32 App.Div.2d 183, 300 N.Y.S.2d 639 (1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 584, 24 L.Ed.2d 510 (1970).

chemist were called he would testify that the substance was in fact 12.7 pounds of cocaine with a purity of 15 per cent. Defense counsel in opening said he was not disputing that a laboratory analysis would show that the white powder was cocaine. In his summation, he referred again to this stipulation: "We stipulated—agreed with the Government—that if a chemist were called he would testify he has made an examination of the substance and found it to be a narcotic drug." The charge of the court referred, without objection, to the stipulation "that the white substance taken from the suitcase is cocaine." While better practice would be to adduce the stipulation itself, the comments in the record here amount to doing so for all practical purposes. *See* United States v. Rodriguez, 241 F.2d 463 (7th Cir. 1957); 9 J. Wigmore, Evidence § 2594 (3d ed. 1940).

■ The trial court's "conscious avoidance" charge.[10] is said to be erroneous because it allegedly relieved the jury of the obligation of affirmatively finding knowledge. Almost exactly the same charge given at the trial of another case involving narcotics was considered before this panel on the same day and immediately prior to this one. United States v. Joly, 493 F.2d 672, 674–676 (2d Cir. 1974).[11] In *Joly*, as here, it was argued that an inference of knowledge that narcotics were being transported is not possible where a number of equally supportable possibilities as to the contents of a container exist (jewelry, watches, gold, etc.). *Joly* upheld the charge on the basis that "the le-

gitimacy of the basic inference of knowledge [from possession] does not automatically disappear because other evidence arguably points the opposite way." *Id.* at 676. Here appellant was a long-time airline employee; the suitcases seemed unusually heavy to him by his own admission; he testified he was propositioned twice by Galardo, a fellow worker to take the suitcases to a hotel in New York; and according to his own story he was to receive $300 for delivering the suitcases to an unknown party in New York. These facts justify the charge as given by the trial court and sustained in United States v. Joly, *supra*.[12]

Judgment affirmed.

---

10. If you find that the defendant did not learn what the substance was, but that the only reason he did not learn it was because he deliberately chose not to learn for the very purpose of being able to assert his ignorance if he was discovered with the substance in his possession, then you may find that he had the full equivalent of knowledge because his self-imposed ignorance cannot protect him from criminal responsibility. If however, you find that the defendant believed that what was in the suitcase was not cocaine or any other narcotic drug, then you must acquit the defendant on both counts.

11. The pertinent portion of the charge is as follows:

In other words, you may find the defendant acted knowingly if you find that either he actually knew he had cocaine or that he deliberately closed his eyes to what he had every reason to believe was the fact. United States v. Joly, at 674.

12. *Joly* also disposes of the Government's argument, made here as there in connection with the charge, that decisions affirmed from the bench may be used as precedents binding upon subsequent panels of the court. We follow *Joly* and treat them as of no such effect.